**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SHAWN MITCHELL, as limited administrator of the**
**Estate of Karen Mitchell,**

                              **Plaintiff,**

     **- against-**                                    **08-CV-871**

**CITY OF ALBANY; MICHAEL FARGIONE; JAMES**
**REDDEN; and JOHN DOES #1-4,**

                              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                         **DECISION & ORDER**

**I.      INTRODUCTION**

       Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 and the New York

state common law asserting claims arising from the arrest of Karen Mitchell.  Defendants

have moved for summary judgment seeking to dismiss Plaintiff's claims.  See dkt. # 32;

dkt. # 33.  Plaintiff has opposed dismissal of some claims.  For the reasons that follow,

Defendants' motions are granted in part and denied in part.

**II.     STANDARD OF REVIEW**

       The Court will apply the well-known standard for deciding a summary judgment

motion brought pursuant to Fed. R. Civ. P. 56.  That standard need not be repeated in full.

Suffice it to say that the Court may grant summary judgment only where "there is no

                                        1

genuine issue as to any material fact and . . . the moving party is entitled to a judgment as

a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23

(1986); Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003).

> The function of the district court in considering the motion for summary
> judgment is not to resolve disputed issues of fact but only to determine
> whether there is a genuine issue to be tried.  Assessments of credibility and
> choices between conflicting versions of events are matters for the jury, not
> for the court on summary judgment.

Gorman-Bakos v. Cornell Co-op Extension of Schenectady County, 252 F.3d 545, 558 (2d

Cir. 2001).

## III.  BACKGROUND

On May 17, 2007, Defendants New York State Trooper Redden and Albany Police

Officer Fargione were paired together as part of Operation Impact, a joint law enforcement

program under which members of the New York State Police work side-by-side with City of

Albany police officers.  At approximately 4:00 p.m., Officer Fargione and Trooper Redden

received a radio dispatch requesting that they respond to the scene of a verbal altercation

at 466 West Street in the City of Albany.

Upon arriving at the scene, Defendants encountered two groups of people on the

front porches of two neighboring houses on West Street.  The people in the groups

appeared to be shouting at each other.  Karen Mitchell's ("Karen") teenage daughter,

Shardonay Tyce ("Shardonay"), was at the scene when Defendants' patrol car arrived.  It

appeared to the officers that Shardonay was attempting to walk away from the scene

when she saw  the police arrive, and one of the neighbors appeared to be indicating that

Shardonay was involved in the dispute.

Officer Fargione and Trooper Redden placed Shardonay in the rear seat of their

police vehicle, without searching or handcuffing her, while they attempted to investigate the situation.  Once in the police vehicle, Shardonay used her cellular telephone to call her mother.  Shardonay was crying and told her mother what had happened but asserted that she had done nothing wrong.  She asked that her mother come to the West Street location.

Shortly thereafter, Karen arrived at the scene in her vehicle.  Karen  abruptly stopped her vehicle in the middle of West Street and jumped out, leaving the door open and keys in the ignition.  After this point in time, there is significant dispute as to what occurred.

Defendants and several witnesses assert that once out of her car, Karen ran at the officers, was belligerent and combative,[1] and repeatedly disobeyed the officers' instructions to calm down and step away from the scene.  It is further asserted that Karen repeatedly tried to get to the police vehicle in which her daughter was seated, and, in doing so, struggled with and took a "swipe" and "swing" at one of the officers.  It is asserted that when the officers tried to place Karen under arrest for disorderly conduct, she resisted, struggled, and caused herself and the two officers to fall to the ground. Once on the ground, she continued to struggle and bite Trooper Redden on the forearm.

Plaintiff has presented the affidavits of three witnesses who tell a decidedly

---

[1]For instance, Defendants assert that, once out of her car, Karen Mitchell ran up the sidewalk towards them, pointing at them, and yelling and screaming obscenities such as "Get my fucking daughter out of the car," "Fuck you," "I hate you fucking pigs," and "I'm gonna kick someone's ass up the road." Defendants further contend that Karen was highly agitated, kicking off her shoes in the direction of the officers and removing her jewelry as she yelled at the officers.

different version of the events of May 17.[2]  Plaintiff's witnesses attest that Karen arrived at the scene and walked to the officers. S. Tyce Aff. ¶ 38.  She was upset but not combative or yelling obscenities. She did not take off her jewelry or kick off her shoes.  Karen asked the officers to release her daughter, but the officers, at first, ignored her, and then became rude and belligerent toward her as she continued to ask that her daughter be released. "Karen Mitchell's voice did get raised in response to the police refusal to let Shardonay out of the police car and the rude manner in which the police were responding to her," but she "was not yelling swear or curse words at the police. She just kept asking that Shardonay be released."  S. Hjardemaal Aff. ¶¶ 45-47.  Karen's sister, Tara Mitchell, took Karen by the hand and led her away from the officers, but one of the officers followed them and "continued to say things to Karen."  T. Mitchell Aff., ¶ 52.  Karen then "walked past where the officer, I believe defendant Fargione, was standing." Id.  ¶ 55.  This was towards the police car where Shardonay was being held. S. Hjardemaal Aff. ¶ 53.   "As soon as she passed [Officer Fargione], he turned and grabbed her arm.  Immediately two other officers [one of whom was Trooper Redden] physically grabbed Karen." T. Mitchell Aff.  ¶ 57.   All four of them fell to the ground with Karen on the bottom.  Id. ¶¶ 58 -60.  "One officer was behind Karen and had his arm all around Karen's neck in what appeared to be a choke-hold." Id. ¶ 61.

> Karen appeared to be in distress.  She was crying and screaming.  I could see her face and, as the officer had his arm around her neck, it appeared that Karen's eyes rolled back in her head.  Two officers had their knees in Karen's back.  I never saw Karen bite, hit, kick, scratch or otherwise

---

[2] Karen Mitchell died on August 13, 2007.  In opposition to the pending motions, Plaintiff offers the affidavits of three witnesses to the events of May 17 – Tara Mitchell (Karen Mitchell's sister); Shardonay Tyce (Karen Mitchell's daughter); and Samuel Hjardemaal (the individual who placed the 911 call on May 17).

affirmatively do anything to harm the officers.

Id. ¶¶ 63-65.

Karen was then handcuffed and taken away in a police car. Tara Mitchell asserts that "[i]t is not true that Karen had caused a disturbance or had done anything which created a risk of public disturbance." Id. ¶ 68.

Once away from the scene, Karen began yelling that she was having difficulty breathing.  The officers called Emergency Medical Services ("EMS") which they met at a nearby funeral home parking lot.  Shardonay was in another police car that also stopped at the funeral home parking lot.  Shardonay asserts that, once her mother was taken out of the other police car, "[t]he police had her kneeling or crouched on the ground.  It appeared . . . that one of the officers had been holding her by the arm and then purposefully let go of her arm causing her to fall back.  When she fell back her head hit the ground." S. Tyce Aff. ¶ 56.  Karen was then transported to Albany Medical Center Hospital by EMS workers.  Trooper Redden also went to Albany Medical Center Hospital to have a wound examined which he asserts was caused by Karen's bite, and he subsequently underwent a series of follow-up blood tests for any diseases he may have contracted from the wound.

Karen was examined at the hospital and then released into the custody of the Albany Police Department the same day.  On May 17, 2007, Karen was charged with Disorderly Conduct in violation of N.Y. Penal Law § 240.20(3), Resisting Arrest in violation of N.Y. Penal Law § 205.30, and Assault in the Second Degree in violation of N.Y. Penal Law § 120.05(3).  The next day, May 18, 2007, Karen was bailed out of custody by her sister, Tara Mitchell.  Tara Mitchell and Shardonay assert that upon leaving custody,

5

Karen appeared to be walking with a limp that she had not had the previous day.

Shardonay asserts that her mother was also "holding her arm in a sling."  S. Tyce Aff. ¶

61.  Shardonay and Tara Mitchell assert that, thereafter, Karen complained of vision

difficulties, pain, discomfort, and left-sided weakness that she had not had before May 17,

2007. T. Mitchell Aff. ¶ 80; S. Tyce Aff. ¶ 65.

Karen died on August 13, 2007.  Plaintiff admits that Karen's death was not

casually related to the events that transpired on May 17, 2007.[3]  The criminal charges

against Karen were still pending at the time of her death, and there has been no formal

motion dismissing the charges.  Plaintiff commenced this action on August 14, 2008.

## IV.    DISCUSSION

### a.    False Arrest Claims - Probable Cause

Defendants move to dismiss Plaintiff's § 1983 false arrest (First Cause of Action)

and New York common law unlawful imprisonment (Sixth Cause of Action) claims on the

grounds that the officers had probable cause to arrest Karen.   Plaintiff opposes the

motion on the grounds that the facts, construed in the light most favorable to Plaintiff,

create a material question of fact that must be resolved by a jury.

The existence of probable cause is a complete defense to claims under Section

1983 and state common law sounding in false arrest and false imprisonment. Jocks v.

Tavernier, 316 F.3d 128, 135 (2d Cir. 2003).  "Whether probable cause exists depends

upon the reasonable conclusion to be drawn from the facts known to the arresting officer

at the time of the arrest."  Devenpeck v. Alford, 125 S. Ct. 588, 593-94 (2004)(citing

---

[3]The autopsy shows that the cause of Karen Mitchell's death was acute intoxication by the combined effects of the drugs Venlafaxine, Morphine and Citalopram.

Maryland v. Pringle, 540 U.S. 366, 371 (2003)).  The inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant. Id. The relevant inquiry is whether "probable cause existed to arrest a defendant" and "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest."  Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).  Where the facts surrounding the arrest are uncontroverted, the determination as to whether probable cause existed may be made by the court as a matter of law.  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).

Construing the facts in the light most favorable to Plaintiff, the police had been called to address a public disturbance in the City of Albany.  When they arrived at the scene, there were a number of people who appeared to be arguing.  It appeared that Shardonay Tyce, a 15-year-old girl, had been involved in the disturbance but was leaving the scene when the police arrived.  The police placed her in the backseat of their police car while they started investigating.  Shortly thereafter, Karen Mitchell abruptly arrived at the scene by stopping and exiting her car while it was in the middle of the street, leaving the door open, and approached the police officers.  She repeatedly asked the police to release her daughter but her requests were denied.  Although Plaintiff's witnesses assert that the police response to Karen's requests was rude and sarcastic, there is no genuine dispute that Karen was told that the police were holding Shardonay while they investigated the circumstances of the dispute.  "Karen Mitchell's voice did get raised in response to the police refusal to let Shardonay out of the police car and the rude manner in which the police were responding to her. . . .   She just kept asking that Shardonay be released." S. Hjardemaal Aff. ¶¶ 45-47.  Karen's sister, Tara Mitchell, took Karen by the hand and led

her away from the officers, but one of the officers followed them and "continued to say things to Karen."  T. Mitchell Aff., ¶ 52.  Karen then "walked past where the officer, I believe defendant Fargione, was standing." Id.  ¶ 55.  This was in the direction of the police car where Shardonay was being held. S. Hjardemaal Aff. ¶ 53.  It was at this point that Officer Fargione took Karen into custody.

Given the undisputed facts, and without concern for the subjective motivations of Officer Fargione, there existed probable cause at this time to arrest Karen for obstructing governmental administration in violation of  N. Y. Penal Law §195.05.  Section 195.05 provides that:

> A person is guilty of obstructing governmental administration in the second degree when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act.

N. Y. Penal Law §195.05.  "The elements of the offense are: 1) intent; 2) obstruction or impairment of a government function, or preventing or attempting to prevent the performance of that function by 3) physical interference." Esmont v. City of New York, 371 F. Supp.2d 202, 210 (E.D.N.Y. 2005).

At the time Officer Fargione took Karen into custody, he had repeatedly denied Karen's request to release her daughter from the police vehicle; Karen had been told that the police were investigating a public disturbance (which Karen was undoubtedly aware of because of what her daughter told her on the cellular phone, because of the number of people on the street, and because what the police had told her); Karen was told that her daughter would not be released until the police had investigated; Karen was visibly upset

8

and had raised her voice; and, after leaving the scene and having been followed by Officer
Fargione, Karen turned and started to walk in the direction of the police vehicle.  It was
objectively reasonable under these facts for Officer Fargione to believe that Karen was
heading toward the police vehicle to release her daughter herself or otherwise interfere
with the on-going investigation.  Therefore, he had probable cause to believe that Karen
was intending to obstruct the police investigation by physically removing Shardonay from
the police vehicle before the police had the opportunity to investigate the situation.  This is
sufficient probable cause to believe that Karen violated N.Y. Penal Law §195.05.  See
Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995) (finding probable cause to arrest plaintiff
for obstructing governmental administration because she disobeyed officer's order to exit
a vehicle); Berard v. Town of Rotterdam, 1:0 6 - C V - 891 (N.D.N.Y.), Jan. 12, 2009
Mem.-Dec. & Ord., p. 12 ("A reasonable officer could conclude that Plaintiff's actions in
stepping toward the camper and saying to Defendants "not to do that to her," after being
told to stay away from the camper and twice being pushed back from the camper while
Defendants were attempting to secure [Gail] Hudson and [a] dog and execute the search
warrant, constituted an attempt to prevent a public official from performing an official
function by means of physical force or interference" in violation of N.Y. Penal Law
§195.05.);  Decker v. Campus, 981 F. Supp. 851, 857-858 (S.D.N.Y. 1997) (dismissing
plaintiff's § 1983 claims because officer had probable cause to arrest plaintiff for
obstructing governmental administration where plaintiff, inter alia, failed to obey the
officer's order to "step back" from accident scene); Linehan v. New York, 201 A.D.2d 706
(2nd Dept. 1994) (officer had probable cause to arrest plaintiff for obstructing
governmental administration because she "resisted the efforts of a court officer to keep

her away from the area where a disturbance was taking place"). Given the existence of this probable cause, Plaintiff's false arrest claims must be dismissed.

### b.    Arguable Probable Cause

Defendants argue that, assuming *arguendo* that actual probable cause for an arrest did not exist, the officers had "arguable probable cause" for the arrest and, therefore, they are entitled to qualified immunity on the § 1983 false arrest claim. The Court agrees.

"'Arguable probable cause [which establishes qualified immunity with respect to a false arrest claim] exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law.'" Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009)(quoting Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir.2007)(bracketed language in Droz, emphasis in Zellner).   When construing the facts in the light most favorable to Plaintiff, and assuming, *arguendo*, that a constitutional violation occurred because there was not actual probable cause, there was arguable probable cause to arrest Karen for obstructing governmental administration. Indeed, the circumstances at issue arose in a "tense, uncertain, and rapidly evolving" situation that required the officers to make "split-second judgments"  – the type of circumstance for which qualified immunity is designed to protect police officers from unwarranted civil actions. Saucier, 533 U.S. at 205.

Reasonable police officers in the same circumstances and possessing the same knowledge as Officer Fargione and Trooper Redding *could* have reasonably believed that probable cause existed to arrest Karen Mitchell for obstructing governmental

10

administration when, after being repeatedly told that her daughter would not be released until after the officers investigated and being visibly upset, she continued to seek her daughters release and then walked in the direction of the police vehicle where her daughter was held.  Therefore, Defendants are entitled to qualified immunity on the § 1983 false arrest claims and these claims are dismissed on this alternative basis.

### c.    Malicious Prosecution - Favorable Termination

Defendants move to dismiss Plaintiff's federal and state law malicious prosecution claims (Second and Seventh Causes of Action) on the grounds, *inter alia,* that there was not a favorable termination on the criminal charges brought against Karen Mitchell. Plaintiff counters that the charges, although not formally dismissed, abated as a matter of law upon Karen's death and, therefore, "must be considered to have been a termination in her favor."  Plt. Mem. L. p. 13.  The Court disagrees.

To state a claim for malicious prosecution under either § 1983 or New York state common law, Plaintiff must establish, *inter alia*, "termination of the proceeding in [the accused's] favor."  Green v. Mattingly, 585 F.3d 97, 104 (2d Cir. 2009).  Whether termination is deemed favorable to the accused is determined in accordance with applicable state law, here, New York law.  Hygh v. Jacobs, 961 F.2d 359, 367 (2d Cir.1992).  Proceedings are "terminated in favor of the accused" when their final disposition is such as to indicate the accused is not guilty.  DiBlasio v. City of New York, 102 F.3d 654, 657 (2d Cir.1996).  "Where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's

11

innocence." Fulton v. Robinson, 289 F.3d 188, 196 (2d Cir. 2002).

> For example, under New York law, an "adjournment in contemplation of dismissal" . . . is not a favorable termination because it leaves open the question of the accused's guilt, and allows the state to pursue the criminal prosecution in the interests of justice during the conditional period. Similarly, as to other types of nonadjudicative resolutions if the outcome was the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused, ... it is not a termination in favor of the accused for purposes of a malicious prosecution claim.

> On the other hand, . . . a discontinuation of the proceedings because of the accused's assertion of a constitutional or other privilege may well be viewed as a favorable termination. [T]he state's effective abandonment of a prosecution, which result[s] in a dismissal for violation of the accused's speedy trial rights, without an adjudication of his guilt or innocence, constitute[s] a favorable termination for the accused should not be required to relinquish such a privilege in order to vindicate his right to be free from malicious prosecution, or to preserve his right to civil retribution for a demonstrated wrong.

Id. (internal quotation marks and citations omitted); see also Smith-Hunter v. Harvey, 95 N.Y.2d 191, 195 (2000)(speedy trial dismissal is an adjudication on the merits not inconsistent with the innocence of the accused which bars future prosecution); Murphy v. Lynn, 118 F.3d 938, 949 (2d. Cir. 1997) (explaining that to not consider a speedy trial dismissal a favorable termination "would encourage state officials, hoping to shield wrongdoing officers . . . from liability, to commence criminal prosecutions against the victims of that wrongdoing and simply hold the criminal charges in abeyance until a court is forced to dismiss the case after six or more months").

In this case, abandonment of the underlying criminal prosecution occurred not because of some inaction by the prosecutor that could be inferred as impacting the question of Karen's innocence, or because of the accused's assertion of a constitutional or other privilege, but because Karen's death made prosecution impossible. Like a dismissal

in the interest of justice, this termination is "neither an acquittal of the charges nor any determination of the merits" and "leaves the question of guilt or innocence unanswered." Hygh, 961 F.2d at 968.  Further, the termination is not the result of a decision or omission by the prosecution that could be construed as an adjudication on the merits not inconsistent with the innocence of the accused, and is not the result of the accused's assertion of a right or privilege.

Accordingly, the Court concludes that abandonment of the underlying prosecution does not qualify as a favorable termination for purposes of the malicious prosecution claims. See Restatement (Second) of Torts, § 661 ("The formal abandonment of proceedings by a public prosecutor is not a sufficient termination in favor of the accused if the abandonment is due to the impossibility or impracticability of bringing the accused to trial.").  Because Plaintiff cannot establish this necessary element of a malicious prosecution claim, the Second and Seventh Causes of Action are dismissed.[4]

### d.    Excessive Force / Battery Claims

Defendants contend that the § 1983 excessive force and state common law battery claims must be dismissed because the officers used no more force than was necessary to execute the lawful arrest of Karen Mitchell.  The motions must be denied.

Even assuming, *arguendo*, that the officers executed a lawful arrest of Karen Mitchell, it is a disputed question of material fact whether the level and amount of force

---

[4]Because of this determination, the Court need not, and does not, address Defendants' alternative grounds for dismissal of the malicious prosecution claims – namely, that there existed probable cause for the prosecution; that the Albany County District Attorney, not Defendants, was responsible for the continuing of the prosecution beyond the accusatory stage; that Defendants are entitled to qualified immunity on the §1983 malicious prosecution claims; and that the malicious prosecution claim against Trooper Redden is barred by the applicable statute of limitations.

used was reasonable under the circumstances.  Accepting Plaintiff's version of events,

Karen Mitchell offered no physical threat to the officers or resistance to being arrested, but

she was tackled by Defendants, choked by Trooper Redden, and Officer Fargione drove

his knee into her back while she was on the ground being handcuffed. This is sufficient to

establish a *prima facie* case of constitutionally impermissible excessive force and a state

common law battery.  See Graham v. Connor, 490 U.S. 386, 395 (1989);[5] Kerman v. City

of New York, 261 F.3d 229, 240 (2d Cir. 2001)(When a court is presented with a summary

judgment motion on an excessive force claim, the court must deny the motion when

disputed facts exist which are "material to a determination of reasonableness."):

Kavazanjian v. Rice, 2008 WL 5340988 at * 6-7 (E.D.N.Y. 2008)("To prove a civil battery

claim against a police officer, a plaintiff is required to show that the officer made bodily

contact, that the contact was offensive, and that [the officer] intended to make the contact.

Additionally, the plaintiff is required to prove that [the officer's] conduct was not reasonable

within the meaning of the New York statute concerning justification of law enforcement's

use of force in the course of their duties [i.e., N.Y. Penal Law § 35.30(1) ].") (citing Nimely

v. City of New York, 414 F.3d 381, 391 (2d Cir. 2005)).  Accordingly, the motion on this

ground is denied.

---

[5]The standard used for determining whether or not excessive force has been used is one of
reasonableness.  As stated in Graham, 490 U.S. at 397,

> the "reasonableness" inquiry in an excessive force case is an objective one: the questions
> is whether the officers' actions are "objectively reasonable" in light on the facts and
> circumstances confronting them, without regard to their underlying intent or motivation.

Because an excessive force claim takes into account the circumstances of each particular incident, the

inquiry required to assess such a claim is necessarily fact-intensive.  Id. at 396-97.

### e.      Statute of Limitations - Battery - Trooper Redden

Defendant Redden moves to dismiss the New York common law battery claim (Fifth

Cause of Action) against him on the ground that the action was commenced more than

one (1) year from its accrual and, thus, is barred by the applicable statute of limitations.

Plaintiff has not addressed this argument.

The failure to oppose a portion of a motion for summary judgment is deemed

abandonment of the claim to which the motion applies, see Rizzo-Puccio v. College

Auxiliary Services, Inc., 216 F.3d 1073 (2d Cir. 2000), and, in the Northern District of New

York, is deemed consent to granting that portion of the motion. See N.D.N.Y.L.R.

7.1(b)(3).  Nonetheless, the Court must determine whether the movant has demonstrated

entitlement to summary judgment on the claim. Bundy Am. Corp. v. K-Z Rental Leasing,

Inc., 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)(Hurd, J.).

Although the state law claims against the City of Albany and Albany Police Officer

Fargione are governed by the one (1) year and ninety day limitations period of N.Y.

General Municipal Law Section 50-i, the state law claims against New York State Trooper

Redden are governed by the one (1) year statute of limitations of N.Y. C.P.L.R. § 215(3).

This is because Redden was not acting as a municipal employee at the time.

The accrual date for the battery claim is the date that the tort was allegedly

committed - May 17, 2007.  Bennett v. City of New York, 612 N.Y.S.2d 201 (2nd Dept

1994).   The instant action was commenced on August 14, 2008,  more than one (1) year

after the accrual of the claim.   Therefore, the state common law battery claim (Fifth Cause

of Action) against Defendant Redden is barred by the applicable statute of limitations, and

is dismissed.

### f.    Equal Protection

Defendants move to dismiss Plaintiff's equal protection claims.  Plaintiff has not

opposed this portion of the motion.

To state a claim for a violation of her right to equal protection, plaintiff must allege

that, (1) "compared with others similarly situated, [Karen Mitchell] was selectively treated;

and,  (2) that such selective treatment was based on impermissible considerations such as

race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or

bad faith intent to injure a person."  Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234

(2d Cir. 2004) (quoting Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir.

1999)); see Skehan v. Village of Mamaroneck, 465 F.3d 96, 110 (2d Cir. 2006).  "A

plaintiff generally must satisfy both elements to establish a claim of selective

enforcement."  LaTrieste Restaurant v. Village of Port Chester, 188 F.3d 65, 70 (2d

Cir.1999).

There exists insufficient facts upon which a reasonable fact finder could conclude

that Karen Mitchell "was treated differently than other similarly situated individuals or, if

[she] was, that the treatment was motivated by [her membership in a suspect class] or by

a malicious or bad faith intent to injure."  Krug v. County of Rennselaer, 559 F. Supp.2d

223, 240 (N.D.N.Y. 2008).   Accordingly, the Third Cause of Action is dismissed.

### g.    Negligence Against City of Albany

Defendant City of Albany moves to dismiss the negligence claim against it (Eighth

Cause of Action) on the grounds that there is no factual basis to impose negligence

liability on the City of Albany.  Plaintiff has not opposed this portion of the motion. The

Complaint merely alleges that "Defendant City negligently caused injuries to Karen

Mitchell and is liable to plaintiff for said injuries."  Dkt. # 1, ¶ 82.  There is no elucidation as

to how or why the City was purportedly negligent, and the has been presented no facts

supporting a viable negligence theory against the City.  Accordingly, the motion in this

regard is granted and the Eighth Cause of Action is dismissed.

### h.    Monell Claim

Defendant City of Albany moves to dismiss any § 1983 claim asserted against the

City pursuant to Monell v. Dept. of Soc. Serv., City of N.Y., 436 U.S. 658 (1978).  Plaintiff

has not opposed this portion of the motion, and Defendant has provided Plaintiff's

interrogatory responses indicating, *inter alia*, that the Complaint was not intended to

include a Monell claim and that Plaintiff does not intend to prove any such claim.

Accordingly, the motion in this regard is granted.

### i.    Doe Defendants

The Court *sua sponte* addresses the claims against the "Doe" defendants. The

failure to identify and properly serve the Doe defendants requires dismissal of the claims

against them for lack of personal jurisdiction. See Fed. R. Civ. P. 4(m);  Crump v. Ekpe,

2010 WL 502762, at * 5, n. 7 (N.D.N.Y. 2010)("Inasmuch as plaintiff has failed to identify

and take steps to obtain jurisdiction over the John Doe defendants, I recommend

dismissal of his claims against them.");  Michelson v. Merrill Lynch, Pierce, Fenner &

Smith, Inc., 709 F. Supp. 1279, 1282 (S.D.N.Y.1989) (citation omitted) (court lacks

jurisdiction until defendants properly served with summons and complaint).

17

The claims against the Doe defendants are conditionally dismissed, unless, within five (5) days, Plaintiff can demonstrate good cause as to why he has not identified the Doe defendants and obtained personal jurisdiction over each of them.  Absent further action by Plaintiff, no further Order will issue on the claims against these defendants.

## V.    CONCLUSION

For the reasons discussed above, Defendants' motions for summary judgment [dkt. # 32 & dkt. # 33] are **GRANTED IN PART AND DENIED IN PART.**

The motions are granted to the extent that **all claims against all defendants are DISMISSED except:**

(1) The 42 U.S.C. § 1983 excessive force and N.Y. common law battery claims against **Defendant MICHAEL FARGIONE**; and

(2) The 42 U.S.C. § 1983 "excessive force" claim against **Defendant JAMES REDDEN**.

The motions are denied as to these claims.


**IT IS SO ORDERED**

DATED:March 31, 2010

Thomas J. McAvoy
Senior, U.S. District Judge

18